COMMONWEALTH *vs.* PATRICK CANNY.

Suffolk.    January 30, 1893. — March 1, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, LATHROP, & BARKER, JJ.

*Intoxicating Liquors — Illegal Keeping for Sale — Presumption.*

At the trial of a complaint for the unlawful keeping for sale of intoxicating liquors, there was evidence that the defendant kept two stores, in which was a large stock of groceries; that, five years previously, he had a license for the sale of intoxicating liquors in one of the stores, but had none at the time of the complaint; that when he had the license the premises contained all the fixtures and paraphernalia of a bar-room, and remained unchanged materially at the date of the complaint; that at the latter date a police officer visited the premises with a search-warrant, and found the defendant there; that, as the officer passed in back of the bar, the defendant went into his office, and the officer heard the click of the safe as if some one was closing it; that the officer asked the defendant to open the safe, and he said he had no key, and left the premises; that he returned subsequently, and, upon another request by the officer and after some hesi-

tation, opened the safe, which was found to contain a large quantity of intoxicating liquors in flasks which were free from dust; that the officer found in this store a number of empty lager beer bottles, and also whiskey glasses and two empty jugs smelling strongly of whiskey; that there was a drawer under the bar with a bowl of sugar in it and a spoon in the bowl, and the edge of the drawer was wet and smelt of whiskey; that the officer also searched the other store, and found in the cellar of the premises a large quantity of liquors in barrels and casks, and the faucets in the barrels, the measures and pumps all showing recent use; and that on several occasions a meal bag containing what appeared to be a jug was seen to be carried from one store to the other. *Held,* that the evidence was sufficient to warrant a verdict of guilty.

At the trial of a complaint for the unlawful keeping for sale of intoxicating liquors, it appeared that the defendant kept two stores, in which was a large stock of groceries; that a large quantity of intoxicating liquors was found in each place, some in flasks concealed in the safe in one store, and some in barrels and casks in the cellar under the other store; and that the defendant previously had a license, which had expired, to sell intoxicating liquors at the former store, in which the usual fixtures and paraphernalia of a bar-room were contained in an unchanged condition at the date of the complaint. The judge refused to rule, as requested by the defendant, that, "in considering the evidence, the jury are to presume that the goods in question were kept for legal purposes, unless the government has shown to the contrary"; and instructed the jury, in effect, that they must be satisfied, beyond a reasonable doubt, on the evidence, that the liquor was kept by the defendant with the intent to sell it, either by himself or by his servants, in violation of law, or the verdict must be not guilty; and that there was no presumption that the liquor found in the stores of the defendant was kept by him with intent to sell it in violation of law. *Held,* that the defendant had no ground of exception.

COMPLAINT, for unlawfully exposing and keeping for sale intoxicating liquors, with intent unlawfully to sell the same in this Commonwealth, on March 25, 1892, at Boston. Trial in the Superior Court, before *Bond,* J., who allowed a bill of exceptions, in substance as follows.

George E. Saxton, a police officer of the city of Boston, testified substantially as follows: " I know the defendant; his place of business is 441 and 445 Hanover Street, also has a store 431 and 439 Hanover Street, corner of Salutation Street. I went to the latter place, March 25, 1892, with officer Harris; I had a warrant for each of the places; I left the officer at 431 and went to 445 myself near two o'clock P. M. ; found the defendant sitting just outside of his office door there, and told him my errand; he said that he was the proprietor. At the back of the store is a long bar, runs mostly the length of the store; there was a man in back of this counter; I stepped in back of the counter; while I was in there the defendant got up and

went into his office; I heard the click of the safe, as if some one was closing it; there was nobody in the office but him; I came out after making search of the back part of the place, and asked him to open the safe; he said he had no key, . . . and very soon afterwards he put on his hat and went away, and I proceeded to search the place there. I found all the fixings of a bar in back of this place; the place was used in 1887; he had a license then, and these bar fixtures, beer-pump, and bottles in all the windows, remain as it was at that time; the pump is not in use; there is a place for glasses and drainers; found quite a number of lager beer bottles there empty, some tonic beer bottles full, some glasses, quite a number of lager beer glasses, and some whiskey glasses. Found together two empty half-gallon jugs, smelt strongly of whiskey; five empty pint flasks; five lager beer bottles in a basket; two glasses there. While I was attempting to search the premises, the defendant returned with his counsel, and I told him again I wanted to look into his safe, and he said he would open the safe under protest, and after some talk and hesitation he opened the safe in my presence and that of officer Harris. When he opened the safe I looked in it. I said that is just what I expected to find, and the defendant replied that it was all his personal property. I found in the safe nineteen pint flasks, full of different kinds of liquors, eleven pint flasks of whiskey, three pints of brandy, three pints of gin in three flasks, two pints of wine in two flasks, and some account-books, bills, and cash. I have come by this place a great many different times; have seen parties go in and out, looked as if they might be seafaring men, longshoremen. He claims to carry on a grocery business in this place. I saw boxes of stuff piled up, in such a way as to obstruct the view somewhat over the whole of the store, unless you take pains to look as you come in. There is a sign in the middle of the place between the doors, and bottles in the window labelled 'brandy, whiskey, gin, wine, porter.' The sign is marked 'Wholesale Dealer in Wines, Liquors, etc.' I went into the other store, 431 and 433, a double store. I found one of the defendant's men in there back of the counter, a man I had seen in the other place frequently, also about the premises back and forth between the two stores. I said nothing to the

man; I went down cellar, directly underneath the retail department. It is divided in the middle by partition in the form of two stores. I have seen the defendant in there at different times looking about the place, and I have seen him back and forth with the team of the store. The cellar is divided by partition into two cellars, with a flight of stairs to each. I found a large quantity of liquor in one of the cellars. There were two tiers of barrels, whiskey casks, wine, gin, etc. All these barrels had brass faucets in them, and the bungs were all started. There were eleven casks of liquor. I seized fifty gallons of whiskey in two casks, forty gallons of rum in one cask, forty gallons of brandy in two casks, twenty gallons of gin in nineteen bottles, fifty gallons of wine in one cask, one hundred and sixty-eight bottles of ale, two pumps, such as used by wholesalers for pumping out liquors in casks, five measures, large and small, from five gallons down to a quart. I seized a proof glass, used in testing liquors, a bit and bit-stock, a bung starter, one pail, a lot of capsules, such as are put over the tops of bottles, made of tinfoil or something of that sort. I saw, underneath some of the barrels, drippings from the faucets, which looked as if they had been recently used; the measures were wet with liquors; one of the pumps showed very recent use. I found corks for jugs and corks for bottles, all lying round, showing they had been used right along. Brandy was in cases, some of it. Found some of the cases broken; one case of brandy with five full bottles, another with twelve full bottles, room for seven more in that case. Some boxes would hold two dozen bottles, and some would hold four dozen. Found two boxes with gin in them. One of these packages had been broken; in the other were a dozen bottles. In the other cellar was a cask of rum; it was not opened at all. It did not have any tag on it. On each of all the other barrels was an old-looking card, on which were the words, ' On storage for P. Canny "; on the reverse side was printed his name and business address. There was an empty alcohol barrel upon which was the government stamp, dated November 28, 1891. On another barrel, which contained proof spirits used by rectifiers, was a stamp, dated February 13, 1892. On another barrel, new and clean, looking as if it had recently come in, the stamp was

dated March 5, 1892. I left quite a large lot of liquor because the amount exceeded the amount called for in my warrant. The cask of rum, on which was no card, had on a stamp dated February 4, 1891. I have seen men tending store in both places. I have seen people going in and out there, Italians, Portuguese, and Irish."

It appeared, on cross-examination of Saxton, that the defendant's store 441 Hanover Street was called the "North End Coöperative Store," where there was a wholesale and retail grocery business carried on; that at the defendant's store 445 Hanover Street there were signs over the door and other places with the words "P. Canny, Wholesale and Retail Liquor Dealer," the signs having stood there for a number of years; that there was a large number of old bottles in the windows of the store for years; that the defendant had formerly been in the liquor business in the place, and had formerly a license to sell intoxicating liquors, but at the time in question had no license; and that the interior of the premises was not materially changed from the condition it was in at the time he carried on business under a license, except that at the time set forth in the complaint there were large stocks of groceries in the cellars and stores.

Samuel L. Harris, a police officer of the city of Boston, testified to the same facts in substance as did Saxton, and in addition, that he went to 445, and went behind the bar; that the flasks taken from the safe were free from dust; that there was a drawer under the bar with a bowl of sugar in it and a spoon in the bowl; that the edge of the drawer was wet, and it smelt of whiskey; that some of the jugs had recently contained whiskey, and several more had no traces of whiskey in them; and that two whiskey glasses smelt of whiskey.

It appeared, on cross-examination of Harris, that he had seen one McElaney, employed by the defendant, at both the stores described by Saxton; that the defendant claimed at the time of the seizure that the packages of liquors in question were old packages that had been in his place ever since he carried on business under a license; and that he had not sold or kept for sale any liquor contrary to law.

Daniel H. Sullivan, a police officer of the city of Boston, testified in substance that he had been on this route for two

years; that he had seen people going in and out of the defendant's store, the same as in any other shop on the street; that he never saw any liquor there, nor any intoxicated person; and that he had seen packages taken from one store to the other, but saw no liquors carried to or from the store.

Elmer W. Jones, a police officer of the city of Boston, testified substantially as follows: "I have seen the defendant and McElaney at both places; have seen packages of goods go from one place to the other; have seen boxes and barrels go from one store to the other. On three occasions I have seen what appeared to be a jug in a bag go from the store 431 to 445, — a bag such as is used for corn or meal, and something in the shape of a two-gallon jug in the bag. No. 445 is kept open late at night; it is not closed till half past eleven o'clock."

On cross-examination, Jones testified that he did not know what the contents of the bag were, and also in substance testified as did officer Sullivan on cross-examination.

Cornelius F. Regan, a police officer of the city of Boston, testified substantially as follows: "I am on that route nights from six to one; I have seen the defendant at each place; have seen boxes brought from one store to the other in a wheelbarrow by men employed by him, but did not know the contents of the boxes; have seen McElaney there; the place is open till after half past eleven; never saw any liquor or intoxicated person there."

On cross-examination, Regan testified in substance as did officers Sullivan and Jones.

Neither Sullivan nor Regan gave any testimony about any bag passing between the premises. All of them testified that there was a large stock of groceries carried in each of the stores continuously.

The defendant called as a witness Charles Holmes, who testified as follows: "I am a salesman for the North End Coöperative Store, and was in the store from two to five times a day, except Saturday; was there from one to two hours in the morning, and about the same time in the evening, and helped if there was anything to do. I sold goods at the grocery stores all over the city, and sometimes out of town: we did a retail and wholesale business. I was paid a salary. Everything

in the wholesale was in 439. I never saw liquor sold there. I am the only traveller. I believe there is a man who has sold goods on commission. Go twice a day into 441 and 445, where the bottles were seized from the safe. I was supposed to show samples. The doors of 441 and 445 were open when the weather was suitable, and it was, like every other store, open to the public. We used to test canned goods at the bar. . . . The most business the defendant does is to collect his rents. He does this in his small office. He is the manager of the coöperative store, and deals very largely in canned goods."

Lewis M. Williams testified that he had business with the defendant at times in February, 1892; that he sold goods for him on commission; that he was in the store sometimes in the morning, and sometimes in the afternoon; and that he did not see any liquor or intoxicated persons in there.

John Jacobson testified that he was a grocer, and had had dealings with the defendant; that he had bought groceries of him often at the store; and that he never saw liquor there or intoxicated persons.

Cornelius P. Sullivan testified that he was a builder, and worked for the defendant, and was at his place daily for some time before the seizure of liquors, and up to and after it, and saw no drinking there, nor liquors, nor intoxicated persons.

The defendant asked the judge to rule as follows:

" 1. The burden of proof is on the government to show that the goods in question were kept for illegal sale, or exposed for illegal sale, beyond a reasonable doubt. 2. In considering the evidence, the jury are to presume that the goods in question were kept for legal purposes, unless the government has shown to the contrary. 3. The government is bound to show that the goods in question were kept or exposed for illegal sale beyond a reasonable doubt. 4. There is no evidence that the defendant exposed for sale any spirituous or intoxicating liquors. 5. There is no evidence that the defendant sold any spirituous or intoxicating liquors."

The judge declined to rule as requested, and instructed the jury that there was no evidence that the defendant had a license to sell intoxicating liquor, and if the defendant kept the liquor which was found by the officers with intent to sell it at either

of the stores described, such sales would be illegal, and the keeping of such liquor for such purpose was an illegal keeping; that it was not necessary for the government to show that the defendant kept the liquor to be sold by himself, if it was kept for sale by him, it was not material whether he was to sell it himself or by his agent or servant; that it is not necessary for the government to show that the defendant himself, or his servants exhibited the liquor to any one and offered it for sale to such person, or gave notice to persons that he kept it for sale; that it was sufficient for the government to prove that the liquor, or a portion of it, was kept by the defendant with intent to sell it in violation of law as he had opportunity at the premises described; that there was no direct evidence of any sales of liquor at the premises described; that the government relied upon the facts and circumstances testified to by the witnesses as being sufficient to warrant the inference that the liquor in the safe and in the cellar was kept by the defendant with the intent to sell the same in violation of law; that there was no presumption that the liquor was so kept by the defendant; and that the jury must be satisfied, on the evidence, that the liquor was so kept by the defendant beyond a reasonable doubt, or the verdict must be not guilty.

The jury returned a verdict of guilty; and the defendant alleged exceptions.

*C. F. Donnelly*, for the defendant.

*C. N. Harris*, Second Assistant Attorney General, for the Commonwealth.

FIELD, C. J.   The evidence was amply sufficient to warrant the jury in finding that the defendant kept intoxicating liquor for sale in violation of the statutes.   The only specific exception argued by the counsel for the defendant is to the refusal of the court to rule that, "in considering the evidence, the jury are to presume that the goods in question were kept for legal purposes, unless the government has shown to the contrary."   The court instructed the jury, in effect, that they must be satisfied, beyond a reasonable doubt, on the evidence, that the liquor was kept by the defendant with the intent to sell it, either by himself or by his servants, in violation of law, or the verdict must be not guilty, and that there was no presumption that the liquor

found in the stores of the defendant was kept by him with intent to sell it in violation of law. This was a correct statement of the law, and we think it was adequate.

*Exceptions overruled.*